*827 The opinion of the court was delivered by
Breaux, J.
Plaintiff sued the defendant to recover the sum of fifteen thousand dollars.
He alleges that a locomotive and tender of the defendant company in the actual management of the employés of the corporation, ran over and killed his daughter, aged 3 years.
He charges the killing to the negligence of the servants of the cor-: poration, which he characterizes as gross, wanton and criminal.
In support of this accusation, it is alleged that they had time, just prior to the accident, 'to see the child and that they did see her, and' could easily have prevented her death by the exercise of ordinary care.
That alarm was given amply in time, by calling and shouting, but. the men paid no heed to them.
That they neglected to blow the whistle or ring the bell while running the engine through the principal street of the town of Berwick.
The plaintiff sues for fifteeen thousand.dollars for damages inflicted upon himself by the killing of his child, for the grief and sorrow and for physical suffering caused by the death.
He also sues for the damages suffered by the child and fixes the-amount at one-third of the sum sued for. •
The defendant company filed a plea of no cause of-action.
The District Court decided that there was no cause of action for damages claimed by the parents for the death of the child, but overruled the exception, in so far as related to the rights of the child, distinct from her parents, which at the death were inherited by the parents.
The suffering of the child is not proven, nor any other actual damage. The verdict must have been for punitive damages. No motion was made to amend the judgment before this court.
The suit is pending in the name of the father, the mother having died since it was instituted.
The main track, where the accident occurred, is built on a grade, five feet above the ground; on the elevation there is a switch on a level with the main track. It enters the main track about forty feet west of plaintiff’s house.
Steps lead from the approach in front of his house to the top 'of the grade.
The child left the house, passed through the gate that had been in *828 advertently left open, by one of the neighbors, went up the steps, and into the side track; thence walked west toward the switch joining both the main and side track.
The engine of the company and a tender were running toward the bridge to Morgan City.
There were three men in charge, the engineer, a fireman and- a brakeman.
The plaintiff avers that these men were not at their posts of duty.
That the duty of the brakeman, since the locomotive and tender were running backward through the principal street of the town, was to take his position at the rear of the tender and be on the lookout to signal to the engineer.
The child left the switch and entered the main track. Unconscious of danger, she stepped toward the train and its merciless and, to her, death-bearing wheels. She was struck; fell, and the wheels passed over her body. She was instantly killed.
No allegation of physical pain was made; none could have been proven. The death was sudden. The poor child did not realize the danger'.
A number of persons, residents of the town, saw the child at the time and were alarmed by the danger in which she was.
They made some noise and thus attracted the attention of the men on the engine.
The brakeman rushed to the front of the tender, jumped down and tried in vain to save the child.
The engineer reversed the engine, but it did not stop before the wheels had passed over the body.
As well mention, at this time, that the engineer did not testify in the case. He was dead at the time it was tried.
It was proven that he was competent as any engineer.
The testimony shows that he was an upright and good man.
It is testified that after this accident he was affected when he re-; called the horrible condition of the child after she had been crushed.
The fact that this occurred while he was in charge; the mangled body, the blood-stained rails, preyed upon his mind, and it doubtless afflicted him to think that he was connected — however innocent he may have been — with this horrible accident.
It is the same in. this suit, as too often the case in similar suits.
The witnesses for the defendant contradict those of the plaintiff.
*829 There is a lamentable difference in the testimony.
Those for the latter testify that the cries were loud, and that the alarm was given in time to prevent the accident, if the men had been at their posts.
Those for the former testify that each man was at his post and that everything possible was done to prevent the accident.
While the negligence was not gross, wanton, or criminal, we are confident that vigilant caution was not exercised on the part of the employés on the occasion of the accident.
The superintendent of the road of the defendant testifies that be■fore an engineer starts his engine backward, he must place the brakeman in the rear end of the tender, which is the front end of the engine in the direction in which it is moving. It is the duty of the brakeman to keep a lookout on thé track, so as to warn the engineer in case of danger. It is the duty of the fireman to ring the bell continually whilst passing through a town or village, and all three, the engineer, fireman, and brakeman, should keep a sharp lookout, and in case of danger should stop as soon as it can be done.
The fact remains uncontradicted that the brakeman was not at the end of the tender.
He was in the tender, but not at the front advancing, where he ■should have been.
A claim for punitive damages is earnestly and ably presented for our consideration.
For two reasons punitive damages can not be allowed.
1. The accident was not occasioned by recklessness and wrong intention, evincing malice and evil disregard of the rights of others.
2. Punitive damages is not an inheritable right.
The injury which will justify the allowing of punitive damages is a personal right. It can be exercised only by the party injured and does not survive in the parents.
1. We will not discuss the first proposition, at length, as it would not serve any purpose in our decision. •
Suffice it to say that the proposition expresses our conclusion after a careful examination of the testimony.
2. Respecting punitive damages, the proposition is maintained by an unbroken line of authorities.
We quote from a decision, the correctness of which is unquestioned:
“ Were this suit prosecuted for the behoof of the mutilated indi *830 vidual himself, it is possible we would not think the verdict of the jury too high. In that case the bodily pain and suffering, the deformity of person, the diminished capacity of laborious exertion, might reasonably justify damages of the class called vindictive or exemplary, the standard of which is of necessity exaggerated beyond the limits of an exact arithmetical appreciation, being, as the title imports, in the nature of a penalty and of an example — partaking of • the character of public justice, while redressing a private wrong.” Black vs. Carrollton R. R., 10 An. 38.
In the case just quoted, as the suit was not prosecuted in the name and for the injured minor, the father’s claim -for punitive damages was rejected.
“Only compensatory damages can be allowed.” Vide McKee vs. R. R. Co., 42 An. —.
The father can not recover compensatory damages in his own right, in this case. Under court a qua’s ruling none was proven.
He has not shown, in so far as relates to the child, such injury as enables us to allow compensatory damages to a larger amount than that fixed in our decree. Only nominal damages can be allowed.
The issues come to us limited to the rights of the child to compensatory damages although instituted to recover punitive damages.
Infants have legal rights, distinct from their parents, which are carefully protected by law.
The right to compensatory damages is (different from the right to punitive damages) one which survives in the parents.
We do not find proof, for actual damages, which can be allowed under established jurisprudence.
But we will not give our sanction to the least absence of an employé of a railroad, when a serious accident happens, while passing through a street of a town.
The danger to human life is too great, and employés, to be relieved from all responsibility, must be at their posts.
In the exercise of the equity power of the court, we assess nominal damages at $250.
The plaintiff had reason to complain and to seek judicial investigation of the facts connected with this accident.
He shall not be made to pay costs.
In view of our statement of the case in the first part of the decision and to prevent inference different from our views upon the subject, *831 we will say that we do not think that the doctrine of contributory negligence applies to a child less than four years of age.
A child of such an age is generally incapable of choosing between right and wrong, good and evil, prudence and'rashness.
It is, therefore, ordered, adjudged and decreed, that there be judgment in favor of plaintiff for the sum of $250 and costs of both courts, and that the judgment of the District Oourt, and the verdict of the jury, be reduced to that sum; after reduction and assessment as made the judgment appealed from is affirmed.
Judgment amended and as amended affirmed, the defendant and appellant to pay costs of both courts.